UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUENTIN L. TAYLOR, | ) |
|         Plaintiff, | ) |
| v. | ) No. 1:20-cv-02413-JPH-MPB |
| DUSHAN ZATECKY, et al. | ) |
|         Defendants. | ) |

**Order Screening Complaint, Dismissing Insufficient Claims,
and Directing Issuance of Process**

Plaintiff Quentin Taylor, an inmate at Westville Correctional Facility, brings this 42 U.S.C. § 1983 action alleging that several individuals violated his constitutional and statutory rights while he was incarcerated at Pendleton Correctional Facility ("PCF"). Because Mr. Taylor is a "prisoner," the Court must screen his complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted).

## II. Allegations[1]

Mr. Taylor's complaint names several defendants: (1) Wexford of Indiana, LLC ("Wexford")[2]; (2) Indiana Department of Correction ("IDOC"); (3) Robert E. Carter, the commissioner of IDOC; (4) Dushan Zatecky, the warden at PCF; (5) Aaron Smith, the executive administrative assistant at PCF; (6) Captain Mason, a shift supervisor at PCF; (7) Captain Rinehart, a shift supervisor at PCF; (8) Captain Rattin, a shift supervisor at PCF; (9) Lieutenant Davis, a supervisor at PCF; (10) Lieutenant Earnest, a supervisor at PCF; (11) Officer Grey, a correctional officer at PCF; (12) Officer Carter, a correctional officer at PCF; (13) Officer Gross, a correctional officer at PCF; (14) C. Conyers, the grievance specialist at PCF; (15) Dr. Lamar, the lead psychiatrist at PCF; (16) Dr. Grey, a psychiatrist at PCF; and (17) two John Doe nurses at PCF. He requests a psychological evaluation by an independent mental health professional and monetary damages.

On December 28, 2019, Mr. Taylor was involved in a physical altercation with a correctional officer at PCF. After the incident, he was taken to the disciplinary housing unit and placed in a holding cell. During the nine hours that he was in the holding cell, Mr. Taylor asked Captain Mason for water and permission to use the restroom, as the holding cell had no sink or toilet. Captain Mason denied Mr. Taylor's requests.

---

[1] Mr. Taylor's complaint runs almost 60 pages. The Court has summarized Mr. Taylor's allegations, but to the extent that a particular incident has been omitted or described in more general terms, this does not indicate the Court is dismissing it from the complaint.

[2] Although Mr. Taylor identifies this defendant as "Wexford Medical of Indiana," the Court understands him to mean Wexford of Indiana, LLC.

Around 4:30 p.m. on December 28, Mr. Taylor was transferred to another holding cell and told he would be housed in this cell. He alleges that he was stripped of all of his "human necessities" in retaliation for the physical altercation with the correctional officer. Dkt. 1 at 18-19. He further states that he was denied recreation, hygiene, and any "human necessit[ies]" from December 28 to December 30 in retaliation for the incident.

While in the holding cell from December 28 to December 30, Mr. Taylor experienced psychosis and began hearing noises and voices. He had suicidal and self-injurious ideation. In the early morning of December 30, 2019, he attempted to commit suicide by hanging. Correctional officers restrained Mr. Taylor and removed the sheet from around his neck. Because he was not fully conscious and was experiencing breathing issues, correctional officers issued an emergency signal and transferred him to the infirmary.

Once at the infirmary, the two John Doe nurses asked correctional officers to remove the handcuffs so they could evaluate Mr. Taylor. The correctional officers refused to remove the handcuffs. Mr. Taylor reported that he had hit his head and felt dizzy and confused. He also asked to see mental health professionals. The two nurses refused to contact any mental health professionals and did not document the medical event or Mr. Taylor's statements.

Correctional officers then transported Mr. Taylor back to disciplinary housing and placed him in another holding cell. They ordered him to strip and placed him on suicide watch without a mental health evaluation or referral. This holding cell also did not have a sink or toilet, and Mr. Taylor's requests to Captain Mason and Officer Carter for water and bathroom breaks were ignored or denied. He therefore was forced to urinate and defecate in the cell and became dehydrated. Mr. Taylor stayed in this holding cell for approximately 12 hours.

While Mr. Taylor was in the holding cell, Dr. Lamar came by and observed Mr. Taylor lying on the floor near a puddle of urine. Dr. Lamar did not intervene to change Mr. Taylor's housing conditions or otherwise act to protect Mr. Taylor's health and safety. Mr. Taylor suffered from extreme anxiety, stress, depression, and delusional thoughts during this time.

On the evening of December 30, Lieutenant Earnest observed Mr. Taylor lying on the floor next to a puddle of urine and transferred him to another holding cell. Although this holding cell had a toilet and sink, Lieutenant Earnest warned Mr. Taylor not to drink the water from the sink because it was "not safe." Dkt. 1 at 24. This cell did not have a window or proper ventilation. It was extremely cold, and Mr. Taylor had no clothing or other items to use to keep warm because he was on suicide watch.

Mr. Taylor reported to Dr. Lamar that he had not showered for four days and that he was being retaliated against by various prison officials. Dr. Lamar ignored Mr. Taylor's complaints. He also informed Captain Mason, Officer Carter, and Officer Gross of the time since his last shower, and these prison officials ignored Mr. Taylor's requests for a shower.

When Mr. Taylor was removed from suicide watch on January 6, 2020, he asked Captain Mason, Officer Gross, and Captain Rinehart for out-of-cell time or recreation because it had been 10 days since he last had recreation or out-of-cell time. His requests were ignored.

Mr. Taylor also asked Captain Mason to transfer him to a proper cell. Captain Mason said he spoke with Aaron Smith and they decided to keep Mr. Taylor in a holding cell. Captain Mason also informed Mr. Taylor that Aaron Smith had directed that Mr. Taylor not receive his personal property, have access to incoming or outgoing mail, or have access to a telephone. Mr. Taylor alleges that Warden Zatecky, Mr. Smith, Captain Rinehart, Captain Mason, and Captain Rattin enforced these deprivations to retaliate against Mr. Taylor.

4

When Mr. Taylor spoke with Dr. Lamar about the mental effects of his isolation and sensory deprivation, she informed Mr. Taylor that the computer indicated Mr. Taylor was no longer housed in a holding cell. Mr. Taylor alleges that IDOC, Commissioner Carter, Warden Zatecky, Mr. Smith, Captain Mason, Captain Rinehart, and Captain Rattin forged the documents and produced false paperwork to conceal the fact that Mr. Taylor was improperly held in a holding cell.

Mr. Taylor experienced extreme anxiety, stress, major depression, delusional thoughts, confusion, insomnia, and suicidal ideation as a result of being placed in isolation and sensory deprivation. He described these feelings to Dr. Lamar and Dr. Grey, but they ignored him and denied his requests for an out-of-cell meeting.

On January 9, 2020, the water in Mr. Taylor's holding cell stopped working. He informed Captain Mason, Captain Rattin, Lieutenant Davis, Officer Gross, and Officer Grey of the outage and made several requests for water. All of the defendants ignored Mr. Taylor. When Mr. Taylor spoke with Captain Mason about the problems, Captain Mason stated that Mr. Smith and Warden Zatecky had directed that Mr. Taylor receive nothing.

Mr. Taylor submitted a health care request form on January 12, 2020, asking to speak with a mental health professional. Specifically, he asked for an out-of-cell meeting with a mental health professional. Wexford, Dr. Lamar, and Dr. Grey refused to pull Mr. Taylor out of the holding cell, did not evaluate him, and did not check on him. Mr. Taylor does allege that he spoke with Dr. Grey two days later, on January 14, and explained the inhumane conditions of his confinement and his resulting mental health struggles. He told Dr. Grey that he felt suicidal and had concealed a razor to use to kill himself. Although Dr. Grey documented these statements, he disregarded the threats

and did not place Mr. Taylor on suicide watch. Dr. Grey told Captain Rinehart about Mr. Taylor's statements, but Captain Rinehart also disregarded the statements as nonsense.

A few hours after speaking with Dr. Grey, Mr. Taylor attempted to commit suicide by cutting himself with a razor. He also had a psychotic episode and began smearing feces on the wall of his cell. Dr. Grey observed the episode and made disparaging remarks to Mr. Taylor. Mr. Taylor was removed from his holding cell while it was cleaned, but Lieutenant Earnest, Captain Rattin, and Officer Grey took no further action to protect Mr. Taylor from further injury. Mr. Taylor was placed back in the holding cell without being taken for medical or mental health evaluation and treatment. He remained in the holding cell until January 16, 2020, when he was transferred to another facility.

### III. Analysis

#### A. Claims that are dismissed

"[I]t is pointless to include [an] anonymous defendant [in] federal court; this type of placeholder does not open the door to relation back under [Federal Rule of Civil Procedure] 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997). Therefore, Mr. Taylor's claims against the two John Doe nurses are **dismissed for failure to state a claim upon which relief can be granted**. If Mr. Taylor learns the names of the unknown defendants through discovery, he may seek leave to add a claim against them.

Although Mr. Taylor names C. Conyers as a defendant, he makes no factual allegations against her. "Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Because Mr. Taylor has made no factual allegations against C. Conyers, all claims against her are **dismissed for failure to state a claim upon which relief can be granted**.

Any claim against IDOC is barred by the Eleventh Amendment. "The Eleventh Amendment bars private litigants' suits against nonconsenting states in federal courts, with the exception of causes of action where Congress has abrogated the states' traditional immunity through its powers under the Fourteenth Amendment." *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 565 (7th Cir. 2019) (quoting *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005)). "This immunity extends to state agencies and state officials in their official capacities." *Id.* All claims against IDOC are **dismissed for failure to state a claim upon which relief can be granted**.

Mr. Taylor seeks relief under the Americans with Disabilities Act and the Rehabilitation Act. "The relief available to [Mr. Taylor] under these provisions is coextensive," and a plaintiff "can have but one recovery." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). "[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Id.*

To state a claim under the Rehabilitation Act, Mr. Taylor must allege "that (1) he is a qualified person (2) with a disability and (3) [the defendants] denied him access to a program or activity because of his disability." *Id.* Although Mr. Taylor alleges that he was denied mental health treatment and housed in a holding cell because of his mental health problems, he does not allege that he was denied access to a program or activity because of this disability. Therefore, his claims under the Americans with Disabilities Act and Rehabilitation Act are **dismissed for failure to state a claim upon which relief can be granted**.

Finally, Mr. Taylor asserts that several defendants engaged in a civil conspiracy. This claim adds nothing because all of the defendants "are state actors, and thus amenable to suit under 42 U.S.C. § 1983, by virtue of their offices." *Logan v. Wilkins*, 644 F.3d 577, 583 (7th Cir. 2011)

(citing *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). Mr. Taylor's civil conspiracy claims are **dismissed for failure to state a claim upon which relief can be granted**.

## B. Claims that shall proceed

Mr. Taylor's Eighth Amendment deliberate indifference to a serious medical need claims **shall proceed** against Dr. Lamar, Dr. Grey, Captain Rinehart, Lieutenant Earnest, Captain Rattin, and Officer Grey. Similarly, his policy or practice claims **shall proceed** against Wexford.

His Eighth Amendment conditions of confinement claims **shall proceed** against Warden Zatecky, Captain Mason, Officer Carter, Lieutenant Earnest, Dr. Lamar, Officer Gross, Captain Rinehart, Mr. Smith, Captain Rattin, Lieutenant Davis, Officer Grey, and Dr. Grey.[3] His related failure to train claims **shall proceed** against Commissioner Carter and Warden Zatecky.

Finally, Mr. Taylor's First Amendment retaliation claims **shall proceed** against Warden Zatecky, Mr. Smith, Captain Mason, Officer Grey, Captain Rattin, and Captain Rinehart.

## IV. Service of Process

The **clerk is directed**, pursuant to Federal Rule of Civil Procedure 4(c)(3), to issue process to defendants (1) Wexford of Indiana, LLC; (2) Commissioner Robert E. Carter; (3) Warden Dushan Zatecky; (4) Aaron Smith; (5) Captain Mason; (6) Captain Rinehart; (7) Captain Rattin; (8) Lieutenant Davis; (9) Lieutenant Earnest; (10) Officer Grey; (11) Officer Carter; (12) Officer Gross; (13) Dr. Lamar; and (14) Dr. Grey in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

---

[3] Mr. Taylor's assertions that several of these defendants failed to intervene or failed to protect him from the alleged unconstitutional conditions are alternative ways of alleging that these defendants were personally responsible for the conditions of his confinement. Therefore, these claims have been grouped together.

The **clerk is directed** to serve Wexford of Indiana, LLC, electronically. Dr. Lamar and Dr. Grey are identified as Wexford employees. In the event neither defendant waives service, Wexford is ORDERED to provide the full name and last known address of these defendants if it has such information. This information may be provided to the Court informally or may be filed *ex parte*.

## V. Conclusion

Mr. Taylor's claims **shall proceed** as outlined in Section III, *supra*. These are the only claims the Court discerns in the complaint. If Mr. Taylor believes additional claims were alleged in the complaint, but not identified by the Court, he shall have **through November 2, 2020**, in which to identify those claims.

The **clerk is directed** to terminate Indiana Department of Corrections, C. Conyers, Nurse #1, and Nurse #2 as defendants on the docket.

The **clerk is directed** to change Wexford's name on the docket from "Wexford Medical of Indiana" to "Wexford of Indiana, LLC."

**SO ORDERED.**

Date: 10/7/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

QUENTIN L. TAYLOR
178973
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Dr. Lamar
Mental Health Professional
4490 W. Reformatory Road
Pendleton, IN 46064-9001

Dr. Grey
Mental Health Professional
4490 W. Reformatory Road
Pendleton, IN 46064-9001

Electronic Service to Wexford of Indiana, LLC
Electronic Service to the following IDOC employees
    Commissioner Robert E. Carter
    Warden Dushan Zatecky
    Aaron Smith
    Captain Mason
    Captain Rinehart
    Captain Rattin
    Lieutenant Davis
    Lieutenant Earnest
    Officer Grey
    Officer Carter
    Officer Gross