UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUENTIN L. TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cv-02413-JPH-MPB |
| DUSHAN ZATECKY, et al. | ) ) ) |
| Defendants. | ) |

**Order Granting Motion to Resolve Defendants' Exhaustion Defense and Denying the State Defendants' Motion for Summary Judgment**

Plaintiff Quentin Taylor, an inmate currently incarcerated at Pendleton Correctional Facility ("Pendleton"), filed this civil rights action under 42 U.S.C. § 1983 alleging that prison officials and medical staff violated his constitutional rights. Defendants Nicole Carter, Leslie Gray, Jason Ernest, Rachael Gross, Davis Mason, Charles Rinehart, Jeremy Rattan, Aaron Smith, Dushan Zatecky, Robert Carter, and Justin Davis (collectively the "State Defendants") seek summary judgment arguing that Mr. Taylor failed to exhaust his available administrative remedies before filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Mr. Taylor titled his response as a motion to resolve the exhaustion defense. Dkt. 62. This motion, dkt. [62], is **granted** to the extent the Court considers the arguments and evidence contained therein.

The record demonstrates that a material factual dispute exists concerning whether Mr. Taylor submitted a corrected formal grievance. Therefore, the State Defendants' motion for summary judgment, dkt. [58], is **denied**.

1

## I. Legal Standard

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. Statement of Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the undisputed evidence are presented in the light most favorable to Mr. Taylor as

the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A. Administrative Remedy Procedure

At all relevant times, Mr. Taylor was incarcerated at correctional facilities within the Indiana Department of Correction ("IDOC"). Dkt. 1 at 2. The IDOC maintains an Offender Grievance Process ("Grievance Process") which is intended to resolve inmate complaints promptly and effectively. Dkt. 60-1 at ¶ 5. The Grievance Process applies to inmate concerns about the conditions of confinement and the actions of staff. *Id.*; *see also* dkt. 60-2 at 3. Mr. Taylor learned about the Grievance Process upon arrival at Pendleton and had access to a copy of the Grievance Process through the Pendleton law library. Dkt. 60-1 at ¶ 6.

The Grievance Process has four steps: (1) an informal attempt to resolve the issue; (2) a formal attempt to solve the issue; (3) a written appeal to the warden or the warden's designee; and (4) a written appeal to the IDOC Grievance Manager. Dkt. 60-2 at 2-3. To exhaust the Grievance Process, an inmate must timely pursue each of the four steps and use the proper forms. Dkt. 60-1 at ¶ 19. When an inmate is transferred to a different correctional facility after initiating a grievance, he may continue to pursue remedies through the Grievance Process at his former facility. Dkt. 60-1 at ¶ 11.

Under the Grievance Process, an inmate must first attempt to informally resolve a complaint. Dkt. 60-2 at 8-9. He may do so either in writing or by

3

speaking "with the staff member responsible for the situation or . . . with the person who is in charge of the area where the situation occurs." *Id.* at 9.

After attempting to informally resolve an issue, an inmate may submit a formal grievance by completing State Form 45471. *Id.* This form must be submitted to the Grievance Specialist no later than 10 business days "from the date of the incident giving rise to the complaint." *Id.* The Grievance Specialist screens each formal grievance for compliance with IDOC policy. *Id.* at 10. If the formal grievance does not comply with IDOC policy, the Grievance Specialist returns the grievance to the inmate with an explanation about why it was returned. *Id.* The inmate then has five business days to submit a revised formal grievance. *Id.* If the formal grievance complies with IDOC policy, the Grievance Specialist assigns a log number and enters it into the record-keeping system. Dkt. 60-1 at ¶ 14.

An inmate initiates a first level appeal by completing State Form 45473 and submitting it to the Grievance Specialist. *Id.* at 11-12. If an inmate is dissatisfied with the response to his first level appeal or he does not receive a response within the applicable timeframe, he may pursue a final appeal to the IDOC Grievance Manager. *Id.* at 12-13.

**B.     Mr. Taylor's Use of the Administrative Remedy Procedure**

Mr. Taylor was incarcerated at Pendleton in December 2019. Dkt. 1 at 5. He alleges that he was subject to cruel and unusual punishment and inhumane treatment from December 28, 2019, until January 16, 2020, at which time he was transferred to Westville Correctional Facility ("Westville"). Dkt. 1 at 41-42.

4

Mr. Taylor initiated the Grievance Process by submitting an informal grievance to staff at Pendleton on January 10, 2020. Dkt. 60-4 at 2, 4.

On January 27, 2020, after his transfer to Westville, Mr. Taylor submitted a formal grievance about the conditions of his confinement at Pendleton. Dkt. 60-4 at 3. Christina Conyers, the Grievance Specialist at Pendleton, returned the formal grievance to Mr. Taylor on January 31, 2020. Dkt. 60-4 at 2. The Return of Grievance form noted the following deficiencies:

- You have submitted the form too early. The situation you described does not exist yet, or you have not allowed enough time for an informal resolution. If you cannot show good cause for submitting it now, you must wait until the correct time has come.
- The grievance form is not completely filled out. Only 1 date per grievance. Complete the form and resubmit it again within five (5) business days.
- You submitted grievances at [Westville] on 1/27/20, 5 business days after your transfer, you could [have] submitted before your transfer.
- Please allow staff 5 business days to respond to your [informal grievance], you submitted informal to staff on 1/10/20, left [Pendleton] on 1/16/20.

*Id.*

Mr. Taylor states that he submitted a corrected formal grievance on February 3, 2020, by placing it in the mail at Westville. Dkt. 63 at 10. Ms. Conyers claims that Mr. Taylor did not submit a corrected formal grievance. Dkt. 60-1 at ¶ 17. Mr. Harvil, the Grievance Specialist at Westville, states that he did not receive a corrected formal grievance from Mr. Taylor, but he acknowledges

5

that Mr. Taylor could have submitted a corrected formal grievance to Pendleton by placing it in the mail. Dkt. 66-1 at ¶¶ 13, 16.

On February 13, 2020, Mr. Taylor sent a Request for Interview ("ROI") to Mr. Harvil stating that he had not received a receipt or other acknowledgement for the corrected formal grievance.[1] Dkt. 62-1 at 2. Mr. Harvil states that he did not receive this ROI. Dkt. 66-1 at ¶ 6. Mr. Taylor submitted three additional ROIs to Mr. Harvil in March 2020 inquiring about the status of the corrected formal grievance he submitted in February 2020. Dkt. 62-1 at 3-5. Mr. Harvil provided copies of Mr. Taylor's original formal grievance in response but did not address Mr. Taylor's statements that he submitted a corrected formal grievance on February 3, 2020. *Id.*

Mr. Harvil did not provide the grievance appeal forms that Mr. Taylor requested. *Id.*; *see also* dkt. 63 at 14-15. Mr. Harvil states that he does not provide grievance appeal forms for grievances filed at other facilities because the other facilities send the appeal form when the inmate returns the grievance response disagreeing with the response. Dkt. 66-1 at ¶ 15. Mr. Taylor has designated evidence, however, that identifies Mr. Harvil as the person to contact to obtain grievance appeal forms. Dkt. 62-1 at ¶ 12.

---

[1] The Grievance Policy states: "If an offender does not receive either a receipt or a rejected form from the [Grievance Specialist] within five (5) business days of submitting it, the offender shall notify the [Grievance Specialist] of that fact . . . ." *See* dkt. 60-2 at 9. Mr. Taylor's ROI was submitted on February 13, 2020, which was eight business days after he allegedly submitted his corrected formal grievance. Neither party addresses whether Mr. Taylor was required to comply with this aspect of the Grievance Policy to exhaust available administrative remedies.

### III. Discussion

The PLRA requires that an inmate exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits")." *Id.* at 90. Proper use of the facility's grievance system requires an inmate "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

While an inmate "must exhaust available remedies," he "need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) the process is so opaque that it is incapable of use, or 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-

60. It is the State Defendants' burden to establish that the administrative process was available to Mr. Taylor and he failed to exhaust it. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendant must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The State Defendants contend that Mr. Taylor did not exhaust the available administrative remedy process because he did not submit a corrected formal grievance after Ms. Conyers rejected his original formal grievance.[2] Dkt. 59 at 10-11. Mr. Taylor argues that the Grievance Process was not available to him because Mr. Harvil did not respond to the corrected formal grievance and did not provide grievance appeal forms. Dkt. 64 at 4-7.

There is a material factual dispute as to whether Mr. Taylor submitted a corrected formal grievance. Mr. Taylor states that he put a corrected formal grievance in the mail at Westville on February 3, 2020. Dkt. 63 at 10. The State Defendants claim that Mr. Taylor did not submit a corrected formal grievance. Dkt. 60-1 at ¶ 17; dkt. 66-1 at ¶ 13. This factual dispute is material because Mr. Taylor was required to submit a corrected formal grievance to exhaust available administrative remedies.

## IV. Conclusion

---

[2] In their reply, the State Defendants assert a new argument—that Mr. Taylor failed to exhaust available administrative remedies because his original formal grievance was untimely. Dkt. 66 at 2-3. The Court will not address this argument because "arguments raised for the first time in a reply brief are waived." *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019).

Mr. Taylor's motion to resolve exhaustion defense, dkt. [62], is **granted** to the extent the Court considered the evidence and arguments contained therein. The State Defendants' motion for summary judgment, dkt. [58], is **denied**. The State Defendants shall have **through December 17, 2021,** in which to notify the Court in writing either that they have abandoned their affirmative defense of exhaustion or that they request a hearing to resolve the factual disputes detailed above.

**SO ORDERED.**

Date: 11/18/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

QUENTIN L. TAYLOR
178973
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel