UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUENTIN L. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02413-JPH-MPB |
| | ) |
| DUSHAN ZATECKY, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Denying Without Prejudice Motion for Preliminary Injunction**

Plaintiff Quentin Taylor has filed a motion for preliminary injunction asking the Court to order the defendants to provide him with adequate mental health care services and stop retaliating against him. Dkt. 94. For the reasons discussed below, his motion is **denied without prejudice**.

### I.   Background

Mr. Taylor initiated this civil rights action in September 2020, at which point he was incarcerated at Westville Correctional Facility ("Westville"). Dkt. 1. He based his complaint on events that occurred in late 2019 and early 2020, when he was incarcerated at Pendleton Correctional Facility ("PCF"). *Id.* After screening, Mr. Taylor was allowed to proceed with the following claims: (1) a Rehabilitation Act claim against Commissioner Robert E. Carter, in Commissioner Carter's official capacity, based on allegations that he was denied access to programs and services because of his mental illness; (2) Eighth Amendment claims based on allegations that Dr. Lamar, Dr. Grey, Captain Rinehart, Lieutenant Earnest, Captain Rattin, Officer Grey, and Wexford were deliberately indifferent to his serious mental health conditions even though they observed signs of psychosis, major depression, and suicidal thoughts and actions; (3) Eighth Amendment claims based on allegations that Warden Zatecky, Captain Mason, Officer

Carter, Lieutenant Earnest, Dr. Lamar, Officer Gross, Captain Rinehart, Mr. Smith, Captain Rattin, Lieutenant Davis, Officer Grey, and Dr. Grey created or allowed for unconstitutional conditions of confinement while he was housed in holding cells in December 2019 and January 2020; (4) Eighth Amendment claims against Commissioner Carter and Warden Zatecky based on allegations that they failed to adequately train staff at PCF, thereby resulting in an unwritten custom of improperly housing inmates in holding cells and refusing to offer treatment to inmates; and (5) First Amendment retaliation claims against Warden Zatecky, Mr. Smith, Captain Mason, Officer Grey, Captain Rattin, and Captain Rinehart (collectively, "Retaliation Defendants") based on allegations that they kept him in a holding cell and enforced various deprivations in retaliation because he filed grievances and contacted state agencies to report misconduct. *See* dkts. 1, 8, 18.

Mr. Taylor left PCR and was transferred to Westville on or about January 16, 2020. Dkt. 2-1 at 8. Because Mr. Taylor was not housed at PCF at the time he filed his complaint, the Court could not have granted any preliminary injunctive relief at the outset of this case, with the possible exceptions of injunctive relief against Commissioner Carter on the Rehabilitation Act claim and the Eighth Amendment claim against Wexford. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief . . . become[s] moot.").

About 13 months after he was transferred to Westville (and four months after he filed his complaint), Mr. Taylor was transferred back to PCF. Dkt. 53. In his motion for preliminary injunction and supporting reply, Mr. Taylor brings a litany of complaints about his treatment since he returned to PCF, alleging that: (1) the mental health services at PCF are inadequate; (2) Wexford and Dr. Lamar are retaliating against him for filing this lawsuit by denying him mental health services and treatment; (3) Dr. Lamar refuses to work with him and tells all the other mental health

staff about this lawsuit, so no one else wants to work with him; (4) he has made multiple requests for mental health care, but his requests are ignored; (5) unnamed mental health staff are forging forms and documents to make it look like he is receiving treatment when he is not; (6) on January 2, 2022, he was suicidal but non-defendant Sergeant Williams sprayed him with mace rather than helping him; (7) he was denied a shower after the January 2 incident; (8) he faced a disciplinary hearing after the January 2 incident, and Sergeant Williams provided false information in an incident report submitted to support the disciplinary charges; (9) officers at PCF are not properly trained to deal with mentally ill defendants; and (10) unnamed officers are retaliating against him for filing this lawsuit by, among other things, falsely telling other inmates that he is a "snitch." Dkts. 94, 99.

Mr. Taylor submitted 44 pages of grievances and health care request forms with his reply, most of which relate to his allegations that his requests for mental health treatment were ignored after he returned to PCF. Dkt. 99-1. The grievances also include the following claims: (1) in April 2021, Officer Grey's brother (who is not a defendant in this case but is also an officer at PCF) threatened to spray him with mace if he complained to correctional staff that he was suicidal rather than contacting the medical department; (2) in May 2021, defendant Officer Grey yelled at him to return to his cellhouse and threatened to write him up and spray him with mace, even though Lieutenant Hurt had allowed Mr. Taylor to be out of his cell; (3) in July 2021, unnamed officers sprayed him with mace when he was having mental health issues and suicidal thoughts rather than contacting mental health staff or offering assistance; and (4) non-defendant Christina Conyers has refused to process his grievances properly. *Id*. He asks the Court to intervene, "provide an effective

solution, and order defendant(s) to stop all retaliation and provide adequate mental health services." Dkt. 94. He also asks the Court to order his transfer to another facility. Dkt. 99.

## II.     Preliminary Injunction Standard

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.* "[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490. 501 (7th Cir. 2020) (cleaned up).

A request for injunctive relief must necessarily be tied to the specific claims on which the plaintiff is proceeding. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) ("[T]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." (cleaned up)); *see also DeBeers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). In addition, "[a]n injunction, like any 'enforcement action,' may be entered only against a litigant, that is, a party that has been served and is under the jurisdiction of the district court." *Maddox v. Wexford Health Sources, Inc.*, 528 F. App'x 669, 672 (7th Cir. 2013) (quoting *Lake Shore Asset Mgmt., Ltd. v. Commodity Futures Trading Comm'n*, 511 F.3d 762, 767 (7th Cir. 2007)).

### III.     Discussion

As the Court's summary of Mr. Taylor's preliminary injunction filings makes clear, his request for preliminary injunctive relief is not tied to the specific claims on which he is proceeding. Instead, he is asking the Court to intervene to remedy harms that he claims occurred more than a year after the events at issue in this lawsuit—specifically, harms that occurred after he was transferred back to PCF. Those claims are factually and chronologically distinct from the claims set forth in his complaint. And many of them involve individuals who are not named defendants in this lawsuit. There is no likelihood that he will succeed on the merits of claims that are outside the scope of his complaint at the conclusion of this case. Thus, the Court cannot grant preliminary injunctive relief with respect to them.

The only allegations that are sufficiently related to the complaint in this case to potentially warrant preliminary injunctive relief are Mr. Taylor's allegations that he is receiving inadequate mental health care at PCF, that Dr. Lamar is denying him mental health treatment, and that his mental health requests are being ignored. Mr. Taylor has submitted evidence suggesting that he submitted many requests for mental health treatment in 2021, some of which indicated that he was having suicidal thoughts. Dkt. 99-1. The Court also observes that the defendants have not provided any medical records showing that Mr. Taylor received any mental health care between his return to PCF in February 2021 and December 2021, with the exception of a passing reference to Mr. Taylor being placed on suicide watch in July 2021. *See* dkt. 97-2 at 74. But the records also show that Mr. Taylor is receiving mental health care now (albeit not from Dr. Lamar personally). *See id.* at 55–103. And there is no indication that Dr. Lamar or any other named individual defendant was responsible for any failures to provide mental health care in 2021, let alone that they were deliberately indifferent to Mr. Taylor's serious medical needs, which is the showing necessary to

5

prevail on an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (Deliberate indifference exists only when an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Thus, Mr. Taylor has not shown a likelihood of success on his claims about the mental health care he is currently receiving. *See Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) ("A movant's showing of likelihood of success on the merits must be strong.") (quotations omitted); *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020) ("A 'strong' showing . . . does not mean proof by a preponderance . . . . But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case.").

To the extent that Mr. Taylor is suggesting that Wexford is responsible for any failure to provide mental health care in 2021, Wexford no longer provides health care services at PCF. Dkt. 97-1 ¶ 3. Instead, the current health care provider at PCF is Centurion Health. *Id.* A claim for injunctive relief becomes moot when "the defendant discontinues the conduct in dispute." *Aslin v. Fin. Indus. Reg. Auth.*, 704 F.3d 475, 477–78 (7th Cir. 2013); *see also Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief . . . become[s] moot."). Thus, claims for injunctive relief against Wexford are now moot because it has discontinued its involvement in Mr. Taylor's medical care. And, to the extent Mr. Taylor seeks injunctive relief from the current medical provider at PCF, that provider—Centurion Health—is not a party to this action, and the Court cannot enter an injunction against it. *Maddox*, 528 F. App'x at 672.

In summary, any claims for injunctive relief against Wexford are moot, Mr. Taylor's remaining claims for injunctive relief are outside the scope of this lawsuit, and—to the extent they

are not—he has not shown a likelihood of success on the merits of those claims. Thus, his motion is denied without prejudice. Mr. Taylor is notified that if he renews his motion, any future request for preliminary injunctive relief must comply with the Prison Litigation Reform Act ("PLRA"). The PLRA provides: "Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). "This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: '[P]rison officials have broad administrative and discretionary authority over the institutions they manage.'" *Westerfer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012); *see also Rasho v. Jeffreys*, 22 F.4th 703, 713 (7th Cir. 2022) (reversing district court's order imposing permanent injunction because mandating that prison hire a minimum number of mental health professionals "impermissibly strips [prison] officials of the flexibility necessary to adopt and implement policies that balance prison resources, safety concerns, and inmate health"). Accordingly, any future motion for preliminary injunction must be narrowly drawn to correct the harm alleged.

### III. Conclusion

For the foregoing reasons, the motion for preliminary injunction, dkt. [94], is **denied without prejudice**. Nothing in this Order prevents Mr. Taylor from filing a new complaint based on any of the allegations addressed in his preliminary injunction filings.

**SO ORDERED.**

Date: 4/1/2022

                                             *James Patrick Hanlon*
                                             James Patrick Hanlon
                                             United States District Judge
                                             Southern District of Indiana

Distribution:

QUENTIN L. TAYLOR
178973
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com

Adrienne Nicole Pope
INDIANA ATTORNEY GENERAL
adrienne.pope@atg.in.gov